**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Kevin D. Hall

     v.                             Civil No. 05-cv-381-JD

Cheshire County Department
of Corrections, et al.


**REPORT AND RECOMMENDATION**


*Pro se* plaintiff Kevin D. Hall has filed a complaint,
pursuant to 42 U.S.C. § 1983, alleging that defendants denied him
adequate medical care in violation of his rights under the
Fifth[1], Eighth and Fourteenth Amendments to the United States
Constitution (doc. nos. 2 and 5).  Seeking monetary and
injunctive relief[2], he brings this action against the Cheshire
County Department of Corrections ("CCDOC"), the CCDOC Medical
Department, an unnamed CCDOC doctor, CCDOC Superintendent Richard
N. Van Wickler and several CCDOC corrections officers.[3]  Also

---

[1]Although Hall references the Fifth Amendment, he provides
no allegations in support such claim, therefore, I construe the
complaint to allege claims only under the Eighth and Fourteenth
Amendments.

[2]Because Hall is no longer incarcerated at the CCDOC, I
recommend that his request for injunctive relief be denied as
moot.

[3]The following CCDOC officers are named defendants:
Mousseau; Westney; Erwin; Travis Smith; Hudson; Chumey; Steiner;

named as a defendant is Roger Zerba, Cheshire County
Commissioner.[4]  In addition, Hall has filed motions for
appointment of counsel (document no. 2) and a request for copies
of the complaint and amendment thereto (document no. 8).

The complaint is before me for preliminary review to
determine whether, among other things, it states a claim upon
which relief may be granted.  See 28 U.S.C. § 1915A; U.S.
District Court for the District of New Hampshire Local Rule
("LR") 4.3(d)(2).  For the reasons stated below, I find that Hall
has alleged Eighth Amendment denial of adequate medical care
claims against Van Wickler, Cook and the unnamed CCDOC doctor.
He has also alleged a Fourteenth Amendment equal protection claim
against Van Wickler.  I recommend dismissal of all remaining
claims.  I also deny the motions for appointment of counsel and
request for copies of the complaint and amendment thereto be
denied.

_____

Desmarais; Trombi; Swain; Fallon; Utton; Clark; Ouellette; Neese;
Walker; Schneider; Boucher; Colby; Robin Cook; and Smith.

     [4]Hall improperly names Zerba as a defendant allegedly
responsible for instituting certain prison policies at the CCDOC.
To the extent he intends to bring suit against the Commissioner
of the Cheshire County Department of Corrections he is instructed
to amend his complaint accordingly.

## Standard of Review

In reviewing a *pro se* complaint, this court must construe the pleading liberally and in favor of the *pro se* litigant.  <u>See Ayala Serrano v. Gonzalez</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that *pro se* pleadings are given fair and meaningful consideration.  <u>See</u> <u>Eveland v. Director of CIA</u>, 843 F.2d 46, 49 (1st Cir. 1988).  I apply this standard in reviewing Hall's complaint.

## Background

Hall is currently incarcerated at the Hillsborough County House of Corrections.  He claims to be a diagnosed schizophrenic with a history of repeated episodes of self-mutilation, some of which allegedly occurred during his previous  incarcerations at CCDOC in 1982 and 1995.  This action stems from a series of

events that occurred at the CCDOC from October 2004 through February 2005, when Hall sustained serious injuries from successive acts of self-mutilation and was allegedly denied adequate medical care.  The following facts are construed in the light most favorable to Hall and in support of his claims against the twenty-six named defendants.

<u>Cell Number 211</u>

Following his transfer from the Valley Street Jail to the CCDOC in October 2004, Hall met with Smith, who discussed placing him in the general prison population under C-4 status, despite his history of self-inflicted harm.  Subsequently he was assigned a C-4 custody status and transferred to cell number 211, a dayroom for pretrial detainees located in the general prison population.

During that time, Hall met regularly with a mental health counselor but subsequently became distraught.  An incident report by Mousseau reveals that on December 26, 2004, Hall's cellmate requested a transfer when Hall kept him awake during the night "talking about murder", self-mutilation and suicide.  A second cellmate requested a transfer for the same reasons on December 29, 2004.  When Mousseau investigated the incident, Hall threatened to harm himself and requested to see Superintendent

Van Wickler.  Mousseau ordered Hall to return to his cell and
lock-down and stated that he would speak to Van Wickler.

### Cell Number 207 and to Isolation Cell

Within fifteen to thirty minutes, the CCDOC announced a
facility lock-down, and Van Wickler, along with officers suited
in riot gear, visited Hall in the dayroom for a cell extraction.
At that time, Hall had in his possession sharp metal wires and
fragments from a porcelain cup, all of which he immediately began
to swallow in the presence of the prison officials.  He was
extracted and transferred to cell number 207.  Van Wickler
permitted Hall his undershorts, a pair of glasses and a book and
also questioned him about the objects he swallowed.  When Hall
identified the objects and stated that a piece of wire was lodged
in his throat and causing him pain, Van Wickler assured him that
the CCDOC would provide him x-rays and medical care.  Van Wickler
advised Hall that he would be placed in an isolation cell for a
four-day time-out and returned to the dayroom on January 3, 2005,
conditioned upon his good behavior.

### Cell Number 1 (East Block) and Cell Number 113 (Bubble)

An incident report of December 30, 2004 reveals that
Sergeant Westney responded to Hall's complaints of pain by
escorting a nurse to his cell for medical treatment and

examination.  When the nurse advised Hall that she could not see the razor and glass allegedly lodged in his throat, Hall began to yell and threatened to kill prison officials and other inmates. Believing that he was denied medical treatment and that the CCDOC was trying to kill him, Hall panicked and screamed for help. Later, when no one responded, he used the sharpened metal frames of his eyeglasses to slash his arms, legs and head, thereby causing himself to bleed profusely.

Officer Erwin and a CCDOC nurse were nearby in the dayroom number 221 dispensing medications and observed that Hall was covered with blood and threatening to kill himself.  The nurse allegedly failed to help him and walked away, even though Hall continued to cut himself in her presence.  Erwin's incident report of December 31, 2004 reveals that Hall's cuts were small and superficial.  The incident was reported to Officer Hudson, and when she visited Hall and asked why he was cutting himself, he proceeded to slash his forehead.

That evening, Cook[5] and an unidentified nurse visited Hall and provided him with medical treatment.  Cook also photographed Hall and his cell, assured him he would receive medical care and

---

[5]I liberally construe Hall's references to "the captain" to mean defendant Robin Cook.

transferred him to East Block cell number 1.  Hall informed Corporal Neese that a wire was lodged in his throat, he had severe pain in his throat and abdomen and needed immediate medical attention.  Since the nurse had already responded to Hall's complaints, Neese provided him with ice cream for his throat.

In an incident report of January 1, 2005, Officer Travis advised Cook that Hall was spitting up blood and complaining of throat and stomach pain.  Cook ordered Hall to be transported to a hospital emergency room but approximately one hour later cancelled the order.  An incident report of January 2, 2005 reveals that Corporal Desmarais observed Hall bleeding from both thighs and his left arm.  Hall admitted the cuts were not life-threatening and were done in an effort to be transported to the hospital for x-rays because he swallowed glass and metal objects that needed to be removed.  Desmarais discussed the incident with Cook.

On January 3, 2005, Cook and an unidentified nurse visited Hall and observed that he was covered with blood and fresh cuts. The nurse treated him, and Cook transferred him to cell number 133, known as "the bubble."  On January 5, 2005, the unidentified CCDOC doctor evaluated Hall and ordered x-rays.  He explained

that the metal shards were passing through Hall's system without
any problems and ordered him to continue eating ice cream and
drinking milk.  Hall responded that he was in severe pain.

An incident report of January 7, 2005 reveals that while
Officer Boucher was escorting a nurse on med pass, she observed
Hall holding a metal object.  Hall threatened to kill Boucher and
her family and requested that she dispense his prescribed
medications.  Boucher declined because of the danger posed by
Hall's threats and opening the food tray to his cell.  In an
incident report of January 8, 2005, Officer Swain noted
superficial cuts on the lower front of Hall's thigh and that Hall
claimed to have swallowed a hand full of glass, although there
was no evidence or source of glass.

<u>Cell Number 110</u>

An incident report of January 8, 2005 reveals that Westney
observed blood in Hall's cell and that he had superficial cuts on
his legs, head and arms.  Hall informed Westney that he was in a
lot of pain and unhappy with his transfer to cell number 110,
which had only a twelve inch square window and a steel door.
While there, he ripped the steel mirror and frame off the wall
and threatened to harm himself.  After his requests for transfer
back the cell number 133 were denied, he broke the vent in the

8

cell ceiling and used a piece of it to cut himself.

Hall then made a deep cut in his arm, which bled profusely; his requests for bandages and medical treatment were denied.   An incident report of January 9, 2005 by Westney reveals that Officer Ouellette reported that Hall had "a lot of blood running from his left arm."  Although Hall stated that he had severe pain and could feel objects in his stomach, he nevertheless refused treatment from a CCDOC nurse.

Without providing any relevant dates, Hall alleges that Van Wickler visited him, observed pools of blood in the cell and walked away.  Thereafter Cook and a nurse visited Hall, photographed him and the cell, brought him to the nurse's office and transferred him temporarily to cell number 112 or 133 and then back to cell 100 after it was cleaned.

On January 12, 2005 Hall was evaluated by a CCDOC doctor who ordered additional x-rays and stated that he was fine and that the metal was passing through him.  Hall replied that he was in severe pain.  The doctor evaluated Hall again on January 19, 2005 and explained that all the metal had passed through him and that he would be fine.  Once again Hall explained that he was in severe pain.  He relayed his complaints of pain to Cook and requested medical treatment and a visit to the hospital.  Cook

9

allegedly denied him medical care on the basis that his injuries were self-inflicted and he was manipulating the prison system.

### Cheshire Hospital

On January 25 or 26, 2005, Hall was transported to Cheshire Hospital.  The examining doctor allegedly ordered immediate removal of the metal pieces and questioned the CCDOC's delay in bringing Hall to the hospital.  Hall underwent endoscopic surgery to remove a metal piece that punctured his intestine.  He was then transported back to cell number 110.  An incident report of January 31, 2005 by Corporal Clark reveals that he transferred Hall to cell number 113 and bandaged a small self-inflicted wound on his right arm.

### Cell Number 110

While in cell number 110 during the first week in February, Hall broke another vent in his cell, swallowed more metal shards and cut himself.  A series of incident reports by Ouelette, Neese, Walker and Schneider, dated February 4 to February 6, 2005, reveal that Hall pretended to swallow more pieces of metal.  At least one incident was reported to Cook.  An incident report of February 7, 2005 by Desmaris reveals that "Hall expanded the hole in the ceiling in the isolation cell 110 to approximately three and a half feet around exposing metal, mesh and metal

braces in the ceiling."  According to Hall, none of the above corrections officers offered him medical care.  Cook and an unidentified nurse, however, assured him he would be provided x-rays.

Subsequently, Hall's request to be transferred to cell number 113 was denied.  He responded by destroying part of his cell ceiling, extracting and swallowing more metal and cutting himself.  The following morning he was transferred to cell number 112 and then back to cell number 110.  When he was denied medical treatment, he responded by destroying the speaker and vents in his cell and digging through the back wall of his cell and into cell number 223.  He was subsequently transferred to cell number 113.

### Valley Street Jail

On February 11, 2005, Hall was transferred to the Valley Street Jail (VSJ) in Manchester, New Hampshire.  Several days after his transfer, officials at VSJ transported him to Elliot Hospital where he was allegedly admitted for three weeks and underwent extensive abdominal surgery and removal of a portion of his intestine.  He was returned to VSJ on March 11, 2005 and placed in the medical unit for two and one half weeks.

The complaint alleges that defendants have denied Hall

11

essential and proper medical care for his injuries and denied him
equal protection by refusing him medical treatment that was
provided to similarly situated inmates.  Defendants' acts and
omissions, Hall claims, rise to the level of constitutional
deprivations in violation of his rights under the Eighth and
Fourteenth Amendments.

## Discussion

I. <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who,
acting under color of state law, violate federal law.  <u>See</u> 42
U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981);
<u>Rodriguez-Cirilo v. Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997).  In
order to be held liable for a violation under Section 1983, a
defendant's conduct must have been a cause in fact of the alleged
constitutional deprivation.  <u>See</u> <u>Monell v. Department of Social
Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056,
1061-62 (1st Cir. 1997).  The premise of Hall's Section 1983
claim is that the defendants, acting under color of state law,
denied him adequate medical care in violation of his rights under
the Eighth and Fourteenth Amendments.[6]

---

[6]While the provisions of the Eighth Amendment do not extend
to pretrial detainees, the Due Process Clause of the Fourteenth

A. <u>Denial of Adequate Medical Care</u>

To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  See <u>Estelle</u>, 429 U.S. at 97.  In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u>   See <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1993).  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  <u>Estelle</u>, 429 U.S. at 104-05.  "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  See <u>Mahan v. Plymouth County House of Corrections</u>, 64 F.3d 14, 17-18 (1st Cir. 1995)( quoting <u>Gaudreault v. Salem</u>, 923 F.2d 203, 208

Amendment provides them with rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner.  See <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002).

(1st Cir. 1990).

Here, the complaint alleges sufficient facts to state an Eighth Amendment claim for the denial of adequate medical care against Van Wickler, Cook and the unnamed CCDOC doctor.  First, Hall has described a serious medical condition by stating that he suffers from schizophrenia and sustained serious bodily injuries as a result of repeated episodes of self-mutilation.  The severity of his injuries required him to undergo a three-week hospital admission and extensive abdominal surgery involving the removal of a portion of his intestine.

Second, Hall has demonstrated deliberate indifference with respect to Van Wickler, Cook and the unnamed CCDOC doctor by alleging that once they had knowledge of his serious medical needs, they nevertheless denied him proper medical care or failed to ensure that he received proper care.  As evidenced by various incident reports filed in support of the complaint, it is clear that Van Wickler, Cook and the unnamed CCDOC doctor personally met with Hall and had knowledge of his medical condition but nevertheless denied him proper care.

On January 5, 2005 and January 12, 2005, the unidentified CCDOC doctor evaluated Hall and explained that the metal shards were passing through his system without any problems.  Despite

Hall's repeated complaints of severe pain, the doctor simply
advised him to continue eating ice cream and drinking milk.  No
other medical care was provided.  The doctor evaluated Hall again
on January 19, 2005 and explained that all of the metal had
passed through him and that he would be fine.  Hall again
complained that he was in severe pain, but the doctor failed to
provide him adequate care.

In January 2005, Hall informed Cook that he was in severe
pain and requested medical treatment and a hospital visit.  Cook
denied him adequate care and warned him not to manipulate the
prison system.  On December 31, 2004 and in early January and
February 2005, Cook visited Hall and observed his physical
condition but failed to adequately respond to his repeated
requests for x-rays and medical care.  On January 1, 2005 Cook
cancelled Hall's scheduled trip to a hospital emergency room.

In addition, Hall personally informed Van Wickler of his
need for medical care.  The record reflects that on December 26,
2004 and in early January 2005, Van Wickler visited Hall,
observed his physical condition and injuries and listened to his
repeated requests for medical treatment.  Although Van Wickler
assured Hall that he would receive medical treatment and x-rays,
that care was never provided.

If true, the allegations demonstrate that defendants' acts and omissions prevented Hall from receiving prompt and essential medical treatment for his serious medical needs. Accordingly, I find that Hall has stated Eighth Amendment denial of adequate medical care claims against Van Wickler, Cook and the unnamed CCDOC doctor.[7] Despite naming twenty correctional officers for the summonses, he has not alleged any facts as to any of them which would support a claim. Because the complaint wholly fails to provide any factual predicate in support of Hall's related claims against any of the remaining defendants, I recommend dismissal of the claims against them.

B.   Denial of Equal Protection

Hall alleges that Van Wickler discriminated against him by denying him adequate medical care while providing other similarly situated inmates adequate medical care. Defendant's acts and omissions allegedly abridge Hall's right to equal protection of the laws in violation of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment

_____

[7]If Hall wishes to pursue his claims against the unnamed CCDOC doctor, he will have to obtain the defendant's full name in discovery and appropriately move to amend the complaint. Hall is further instructed to forward a summons to this Court with the defendant's proper name.

16

mandates that similarly situated persons be treated alike absent
a rational basis for doing otherwise.  See <u>City of Cleburne v.
Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 440 (1985)(citing
<u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982)); <u>accord</u> <u>Village of
Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)(recognizing equal
protection claim where plaintiff alleges that [he] has been
intentionally treated differently from others similarly situated
and there is no rational basis for the difference in treatment).
To prevail on an equal protection claim, Hall must show that he
was treated differently than inmates who were similarly situated
and that such unequal treatment was based on impermissible
considerations such as race, religion, intent to inhibit or
punish the exercise of constitutional rights, or malicious or bad
faith intent to injure a person.  See <u>Barrington Cove, LP v. R.I.
Hous. and Mortg. Fin. Corp.</u>, 246 F.3d 1, 7 (1st Cir.
2001)(quoting <u>Rubinovitz v. Rogato</u>, 60 F.3d 906, 909-10 (1st Cir.
1995).

Here, Hall alleges that Van Wickler denied him adequate
medical care while providing other similarly situated inmates
with adequate medical care, despite the fact that the other
inmates suffered from less severe medical conditions.  According
to Hall, one inmate suffered from an injured fingertip and was

17

immediately transported to Cheshire Hospital for treatment.  A
second inmate sustained an injury from a fall and also was
immediately transported to Cheshire Hospital for treatment.  Even
though Hall suffered from more serious injuries, he was denied
adequate and prompt care at the CCDOC during October 2004 and
February 2005.

Accepting Hall's allegations as true, it appears that he was
treated differently than inmates who were similarly situated and
who suffered from less severe medical needs.  To the extent
Hall's unequal treatment was based on an impermissible
considerations, his allegations, along with the inferences
derivable therefrom, are sufficient to give rise to viable
Fourteenth Amendment equal protection claim against Van Wickler.

II.  Municipal Liability

Named as a defendant in this action is the CCDOC, a
municipal entity.  Municipalities and local government entities
are "persons" within the meaning of Section 1983.  See Monell,
436 U.S. at 690.  A municipal entity cannot be held liable under
Section 1983 on a theory of *respondeat superior* or vicarious
liability; rather the municipality itself must proximately cause
the constitutional injury, through promulgation or tacit approval
of a policy or custom.  See Canton v. Harris, 489 U.S. 378, 385

18

(1989).  To state a viable Section 1983 claim, a plaintiff must allege in substance that the challenged municipal custom or policy was the "moving force" behind the constitutional violations.  See Brown, 520 U.S. at 404; McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540, 544 (1st Cir. 1996) (citations omitted).

In this action, if Hall intends to pursue claims against the CCDOC he must, at a minimum, allege that his constitutional deprivations were the product of a municipal custom or policy. Even liberally construing the complaint, I cannot reasonably conclude that the wrongful conduct ascribed to the defendants was the product of any unconstitutional municipal custom or policy. Instead, the complaint plainly alleges that the wrongful conduct to which Hall was subjected resulted from the actions taken by individual defendants and not as the result of a policy statement, ordinance, regulation or officially adopted decision. See Monell, 436 U.S. at 690.  Nothing in the complaint demonstrates how the county or the CCDOC was the "moving force" behind the actions or omissions by Van Wickler, Cook or the unnamed CCDOC doctor.  Accordingly, I conclude that the complaint fails to state a viable claim premised upon municipal liability and, therefore, recommend that the CCDOC be dismissed from this

action.

Construed liberally, the complaint also names Van Wickler, Cook and the unnamed CCDOC doctor in their official capacities as officers of the CCDOC.  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent."  <u>Monell</u>, 436 U.S. at 690 n.55.  <u>See</u> <u>also</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1984)(suits against parties in their official capacities treated as suits against the municipality).  Because I find no municipal liability as to the CCDOC, I extend that reasoning to defendants Van Wickler, Cook and the unnamed CCDOC doctor and conclude that the official capacity claims against them fail.

III. <u>Appointment of Counsel</u>

Hall moves for appointment of counsel, asserting that in light of his mental condition and diagnosis of schizophrenia and the legal complexity of his case and the constitutional issues raised, he cannot adequately represent himself.

An indigent litigant must show that exceptional circumstances exist to justify appointment of counsel, such that without counsel the litigant most likely would be unable to obtain due process of the law.  <u>See</u> <u>DesRosiers v. Moran</u>, 949 F.2d 15, 23-24 (1st Cir. 1991).  "In determining whether the

circumstances are 'exceptional,' courts have considered such factors as the merits of the case, the litigant's capability of conducting a factual inquiry, the complexity of the legal and factual issues, and the ability of the litigant to represent [himself]." Weir v. Potter, 214 F. Supp. 2d 53, 54 (D. Mass. 2002)(citing Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986)).

While Hall maintains that he is unable to represent himself adequately, he has not demonstrated an inability to litigate or other exceptional circumstances to justify the appointment of counsel.  He has filed an articulate fifty-page complaint and eleven-page amendment thereto, along with voluminous supporting documents, in which he has presented his claims clearly and effectively.  At this preliminary stage in the proceedings, appointment of counsel does not appear to be necessary.  Having considered his circumstances and the applicable law regarding his rights to legal representation, I recommend that his motion be denied without prejudice to it being renewed at a later date should circumstances warrant renewal.

## Conclusion

For the reasons stated above, I find that Hall has alleged Eighth Amendment denial of adequate medical care claims against

21

Van Wickler, Cook and the unnamed CCDOC doctor.  I further find
that he has alleged a Fourteenth Amendment equal protection claim
against Van Wickler.  I recommend dismissal of all remaining
claims.  I further recommend that the motions for appointment of
counsel and copies of the complaint and amendment thereto be
denied.

    Accordingly, by separate order issued simultaneously with
this report and recommendation, I authorize the above viable
claims to proceed.

    If this recommendation is approved, the claims as identified
in this report and recommendation, will be considered for all
purposes to be the claims raised in the complaint.  If the
plaintiff disagrees with the identification of the claims herein,
he must do so by objection filed within ten (10) days of receipt
of this report and recommendation, or he must properly move to
amend the complaint.

    Any further objection to this report and recommendation must
be filed within ten (10) days of receipt of this notice.  Failure
to file objections within the specified time waives the right to
appeal the district court's order.  See 28 U.S.C. § 636(b)(1);
see also Unauthorized Practice of Law Committee v. Gordon, 979

F.2d 11, 13–14 (1st Cir. 1992); <u>United States v. Valencia–Copete</u>,

792 F.2d 4, 6 (1st Cir. 1986).


                                    <u>     /s/ James R. Muirhead          </u>
                                    James R. Muirhead
                                    United States Magistrate Judge

Date: February 10, 2006

cc:   Kevin D. Hall, *pro se*